UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| KESHIA LARRY,<br><br>        Plaintiff,<br><br>v.<br><br>EQUIFAX INFORMATION SERVICES, LLC,<br><br>        Defendant. | Case No.: 1:22-cv-00340<br><br>**COMPLAINT AND<br>DEMAND FOR JURY TRIAL**<br><br>1. **FCRA, 15 U.S.C. § 1681** *et seq.* |

Plaintiff Keshia Larry, ("Plaintiff") through counsel, alleges violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.* against Defendant Equifax Information Services, LLC ("Equifax" or "Defendant").

## I.    INTRODUCTION

1. Plaintiff's Complaint alleges violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 et seq. against Equifax, a consumer reporting agency, for reporting inaccurate information on Plaintiff's consumer report. "Consumer reports" under 15 U.S.C. § 1681a(d) include both credit file disclosures obtained directly by Plaintiff from the consumer reporting agencies and consumer reports obtained by third parties as a factor in establishing Plaintiff's eligibility for credit.

## II.    JURISDICTION AND VENUE

2. The District Court has federal question jurisdiction over these claims pursuant to 28 U.S.C. § 1331; 15 U.S.C. § 1681.

3. Venue in this District is proper pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to the claim occurred in this district.

4. Defendant transacts business here; as such, personal jurisdiction is established.

### III. PARTIES

5. Plaintiff incorporates herein by reference all of the above paragraphs of this Complaint as though fully set forth at length herein.

6. Plaintiff is a natural person residing in the city of Chicago, Cook County, Illinois.

7. Plaintiff is a *consumer* as defined by the FCRA, 15 U.S.C. § 1681a(c).

8. Defendant Equifax is a "consumer reporting agency," as defined in 15 U.S.C. § 1681a(f). Upon information and belief, Defendant is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing "consumer reports," as defined in 15 U.S.C. § 1681a(d), to third parties. Equifax's principal place of business is located at 1550 Peachtree Street NW, Atlanta, Georgia, 30309. Equifax can be served through its registered agent, Corporation Service Company, 2 Sun Court, Suite 400, Peachtree Corners, Georgia 30092.

9. Upon information and belief, Defendant disburses consumer reports to third parties under contract for monetary compensation.

10. At all relevant times, Defendant acted through duly authorized agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

11. Any violations by Defendant were not in good faith, were knowing, negligent, willful, and/or intentional, and Defendant did not maintain procedures reasonably adapted to avoid any such violations.

## IV. FACTUAL BACKGROUND

12. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully set forth at length herein.

13. The United States Congress decided that the banking system is dependent upon fair and accurate credit reporting. Inaccurate consumer reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continual functioning of the banking system.

14. Congress enacted the FCRA to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.

15. The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other consumer information.

16. Defendant report consumer information about Plaintiff and other consumers through the sale of consumer reports.

17. Defendant's consumer reports generally contain the following information: (i) Header/Identifying Information: this section generally includes the consumer's name, current and prior addresses, date of birth, and phone numbers; (ii) Tradeline Information: this section pertains to consumer credit history, and includes the type of credit account, credit limit or loan amount, account balance, payment history, and status; (iii) Public Record Information: this section typically includes public record information, such as bankruptcy filings; and (iv) Credit Inquiries: this section lists every entity that has accessed the consumer's file through a "hard inquiry" (i.e., consumer-initiated activities, such as applications for credit cards, to rent an apartment, to open a

deposit account, or for other services) or "soft inquiry" (i.e., user-initiated inquiries like prescreening).

18. Defendant obtains consumer information from various sources, including furnishers that provide consumer information to Defendant, and information Defendant independently sources itself or through third party providers, vendors or repositories, including computerized reporting services like PACER.

19. The diligence Defendant exercises in recording consumer bankruptcy filings is not replicated in its reporting of the effects of bankruptcy proceedings and orders upon certain accounts, including accounts that are reaffirmed during a consumer's bankruptcy.

20. Consequently, Defendant routinely reports inaccurate, incomplete, outdated, and materially misleading information about consumers after they have been discharged from bankruptcy, without verifying or updating the information as required by § 1681(e)(b), despite possessing information that indicates their reporting is inaccurate.

21. The majority of institutions that offer financial services (e.g., banks, creditors, lenders) rely upon consumer reports from CRAs (like Defendant) to make lending decisions. Those institutions also use FICO Scores, and other proprietary third-party algorithms (or "scoring" models) to interpret the information in a consumer's consumer report, which is based on the amount of reported debt, payment history, and date of delinquencies contained in Defendant's reports.

22. FICO and other third-party algorithms use variables or "attributes" derived from a consumer's consumer report to calculate a "credit score," which is a direct reflection of a consumer's creditworthiness.

23. The information reported by Defendant contributes to consumer creditworthiness,

4

including their FICO Scores, which are calculated using information contained in Defendant's consumer reports.

24. FICO Scores factor the following consumer report information: Payment history (35%); Amount of debt (30%); Length of credit history (15%); New credit (10%); and Credit mix (10%).

25. FICO Scores factor the following: Payment history (35%); Amount of debt (30%); Length of credit history (15%); New credit (10%); and Credit mix (10%).

26. "Payment history" refers to whether a consumer has paid his or her bills in the past, and whether these payments have been timely, late, or missed.

27. In factoring the severity of delinquent payments, a FICO Score considers how late the payment continues to be, how much is owed, how recently the delinquency occurred, and how many delinquent accounts exist.

28. The more severe, recent, and frequent late payments are, the greater the harm to the FICO Score.

29. However, after a delinquent account has been remedied, a consumer's FICO score may increase so long as the account stays current.

30. Defendant voluntarily obtained Plaintiff's consumer bankruptcy information and reported it in individual account tradelines and the Public Records section of Plaintiff's consumer reports.

31. Defendant is well aware that the effect of a Discharge Order in a Chapter 7 Bankruptcy is to discharge all statutorily dischargeable debts other than those that have been reaffirmed in a reaffirmation agreement or successfully challenged in an adversary proceeding.

32. Defendant is also aware of that any debts paid/settled before Plaintiff's bankruptcy

filing are not included in the bankruptcy.

33. Defendant receives information about account payments/settlements of debts directly from furnishers of account/tradeline information.

34. However, Defendant regularly reports inaccurate information about consumers after they receive a Discharge Order.

35. Rather than follow reasonable procedures to assure maximum possible accuracy, as required by the FCRA, Defendant frequently reports information regarding pre-bankruptcy debts based on information it knows is incomplete or inaccurate.

36. Consequently, Defendant regularly publishes consumer information that conflicts with information: provided by data furnishers to Defendant, already included in Defendant's credit files, contained in public records that Defendant regularly accesses, or sourced through Defendant's independent and voluntary efforts.

37. Defendant routinely reports inaccurate and materially misleading information about consumers like Plaintiff, without verifying or updating it as required by § 1681(e)(b), despite possessing information inconsistent with the reported information that establishes that the reported information is inaccurate.

38. Defendant knows the information it reports about consumers' bankruptcies is often inconsistent with public records, information provided by furnishers, and data contained in Defendant's own files.

39. Consumers have filed thousands of lawsuits and FTC and Consumer Financial Protection Bureau complaints against Defendant for its inaccurate credit reporting following a Chapter 7 discharge.

40. Thus, Defendant is on continued notice of its inadequate post-bankruptcy reporting

6

procedures, which cause Defendant to report inaccurate balances, account statuses, payment histories, and/or payment statuses.

*Allegations Specific to the Credit Reporting of Plaintiff*

41. In or about May 2017, Plaintiff obtained a credit card from JPMorgan Chase Bank, account no. starting with 426684 ("the Account").

42. Sometime before October 2020, Plaintiff entered into a settlement agreement with JPMorgan Chase Bank to pay the balance of the Account.

43. In or about early October 2020, Plaintiff made her final payment on the settlement agreement and received a letter from JPMorgan Chase Bank dated October 11, 2020 that confirmed JPMorgan Chase Bank received her final payment. Thereafter, Plaintiff was no longer personally liable for the Account.

44. On or about April 8, 2021, Plaintiff filed for a voluntary "no asset" bankruptcy under Chapter 7 of Title 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Illinois (Eastern Division), petition number 21-04663.

45. Plaintiff received an Order of Discharge on or about July 13, 2021.

46. Sometime after Plaintiff's bankruptcy discharge, Plaintiff obtained Plaintiff's Experian, Equifax, and Trans Union consumer reports to ensure that Plaintiff's credit account tradelines and bankruptcy were being reported accurately.

47. Defendant obtained notice of Plaintiff's bankruptcy discharge through its routine, independent collection of consumer information from third party vendors such as Lexis-Nexis, as well as from furnishers that provide data regarding the individual tradelines reported by Defendant in Plaintiff's consumer reports.

48. In the Public Records section of Plaintiff's consumer report, Defendant included the

bankruptcy case number, court, filing date, and the fact that Plaintiff's bankruptcy had been discharged.

49. Defendant also obtained notice of Plaintiff's settlement of the Account from the furnisher of the Account, JPMorgan Chase Bank.

50. Defendant also reported Plaintiff's credit history in individual "tradelines," including names of credit accounts, account numbers, account types, responsibility for the account (i.e., individual or joint accounts), the date the accounts were opened, statuses, and the dates of the last status update.

51. Defendant is aware that CRAs are not permitted to report account settled/paid before the bankruptcy filing with a status of "discharged through bankruptcy."

52. Defendant should have reported all of Plaintiff's accounts settled before his bankruptcy filing as settled/paid.

53. Defendant failed to report that the Account was settled/paid and instead reported that it was included in Plaintiff's bankruptcy discharge.

54. Plaintiff learned Equifax was inaccurately reporting Plaintiff's settled Account as having been included in Plaintiff's bankruptcy, and subject to bankruptcy coding that conveys to creditors/lenders that the Account was discharged or non-paid even though Plaintiff had settled and paid the Account.

55. Before filing for bankruptcy, Plaintiff settled/paid the Account, and therefore, the Account was not dischargeable or discharged.

56. However, when Plaintiff pulled Plaintiff's consumer reports, Plaintiff discovered that Equifax was not reporting the Account as settled and paid but was instead reporting it as included in Plaintiff's bankruptcy.

57. Defendant does not have reasonable procedures in place to detect and correct pre-Chapter 7 debts that are settled before bankruptcy which report as discharged through bankruptcy, even where Defendant has received information from the furnisher that indicates the Account was settled before the bankruptcy filing.

58. Notably, the other national consumer reporting agencies Experian and Trans Union did not inaccurately report the Account like Equifax.  Experian accurately reports the Account as settled and did not inaccurately report that the Account was included or discharged in Plaintiff's bankruptcy.

59. JPMorgan Chase Bank furnished information to Defendant that indicated Plaintiff's Account was settled/paid before Plaintiff's bankruptcy filing, but Defendant rejected or otherwise overrode the data it received.

60. Defendant inaccurately reported that Plaintiff discharged the Account through bankruptcy when Plaintiff had paid to settle the Account.

61. Defendant failed to indicate the Account was settled and paid before Plaintiff's bankruptcy filing.

62. Equifax's reporting was patently false and materially misleading, as the Account was settled and paid before the bankruptcy filing and not discharged by Plaintiff's bankruptcy.

### *Plaintiff's Damages*

63. Upon information and belief, had Defendant accurately reported the Account with its correct payment history and status, Plaintiff's credit scores would have been better.

64. After Plaintiff's bankruptcy discharge, Plaintiff applied for a credit card with Capital One and was denied due to the inaccurate reporting of the Account by Defendant.

9

65. Defendant's inaccurate reporting of the Account, along with additional information belonging to Plaintiff, was published to Capital One and Rogers Auto by Defendant during the process of Plaintiff's credit applications.

66. As a direct result of Defendant's inaccurate reporting, Plaintiff suffers damages, including a decreased credit score, lower overall creditworthiness, and other financial harm.

67. Additionally, Plaintiff suffers interference with daily activities, as well as emotional distress, including, without limitation, emotional and mental anguish, loss of sleep, reputational damage, violation of privacy, humiliation, stress, anger, frustration, shock, embarrassment, and anxiety.

## V. COUNT I
### Equifax
### (Violations of the FCRA, 15 U.S.C. § 1681 *et. seq.*)

68. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

69. The FCRA requires consumer reporting agencies, like Defendant, maintain and follow reasonable procedures to assure maximum possible accuracy of consumer information. 15 U.S.C. § 1681e(b).

70. Defendant negligently and/or willfully violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of the information included in Plaintiff's credit file/report.

71. Defendant independently sough information about Plaintiff's bankruptcy filing and discharge and voluntarily included it in Plaintiff's consumer reports.

72. When Defendant voluntarily procures and reported Plaintiff's bankruptcy information, it had an obligation to follow reasonable procedures to ensure it reported the bankruptcy with

maximal accuracy.

73. Defendant received notice of Plaintiff's settlement and payment of the Account through information provided by the data furnisher, JPMorgan Chase Bank and therefore had actual knowledge of the settlement.

74. But despite knowing the Account had been settled and paid before bankruptcy, Defendant inaccurately reported the Account as "discharged in bankruptcy."

75. Defendant knew or should have known of its obligation under the FCRA, especially those pertaining to reporting debts paid before a bankruptcy filing.

76. These obligations are well established by the plain language of the FCRA, promulgated by the Federal Trade Commission, detailed in case law, and exemplified in prior cases involving Defendant from which Defendant is on notice of its unreasonable procedures concerning the reporting of debts settled before a bankruptcy filing.

77. Additionally, Defendant possesses or could easily obtain substantial written materials that detail CRAs' duties and obligations under the FCRA, including those arising after a consumer file for Chapter 7 Bankruptcy.

78. Despite knowing these legal obligations, Defendant willfully and knowingly breached its duties in violation of 15 U.S.C. § 1681e(b). Accordingly, Defendant deprived Plaintiff of Plaintiff's rights as a consumer under the FCRA.

79. Not only did Defendant have prior notice of its unreasonable procedures for reporting debt settled before a bankruptcy filing, but it also possessed information from which it should have known the information reported about Plaintiff was inaccurate.

80. Defendant knew from the furnisher of the Account that the Account had been settled and paid before Plaintiff filed for bankruptcy.

81. Defendant knows that a debt that is settled before a bankruptcy filing is no longer owed and, therefore, cannot be discharged in bankruptcy.

82. Yet in this case, Defendant reported the Account, which it knew had been settled/paid before Plaintiff's bankruptcy filing, as "discharged in bankruptcy."

83. Defendant violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of Plaintiff's consumer information.

84. Defendant also violated 15 U.S.C. § 1681e(b) by failing to report accurate information when Defendant knew or should have known the information it was reporting is inaccurate, and/or otherwise contradicted by information known by Defendant, reported to Defendant, and reasonably available to Defendant.

85. Defendant's violation of 15 U.S.C. § 1681e(b) were willful.

86. Alternatively, Defendant's violations of 15 U.S.C. § 1681e(b) were negligent.

87. Defendant's inaccurate reporting damaged Plaintiff's creditworthiness.

88. Plaintiff suffers actual damages, including a decreased credit score, loss of credit opportunities, credit denial, and other financial harm caused by Defendant inaccurately reporting the Account as discharged in bankruptcy, and otherwise failing to report that the Account was settled and paid before Plaintiff's bankruptcy filing.

89. Plaintiff also suffers interference with daily activities caused by other harm including, but not limited to, emotional distress, mental anguish, humiliation, stress, anger, loss of sleep, frustration, shock, embarrassment, and anxiety.

90. Defendant is a direct and proximate cause of Plaintiff's damages.

91. Defendant is a substantial factor in Plaintiff's damages.

92. Therefore, Defendant is liable for actual and statutory damages, punitive damages, attorneys' fees, costs, as well as other such relief permitted by 15 U.S.C. § 1681 *et seq*.

## VI.     **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Keshia Larry respectfully requests judgment be entered against Defendant for the following:

A. Declaratory judgment that Defendant violated the FCRA;

B. Actual damages pursuant to 15 U.S.C. § 1681n(a)(1) or § 1681o(a)(1);

C. Statutory damages of $1,000.00 pursuant to 15 U.S.C. § 1681n(a)(1);

D. Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

E. Costs and reasonable attorney's fees pursuant to 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2);

F. Awarding Plaintiff any pre-judgment and post-judgment interest as may be allowed under the law; and

G. Any other relief that this Court deems appropriate.

## VII.     **JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury of all issues triable by jury.

Respectfully submitted this 20th day of January 2022.

*/s/Syed Hussain*
Syed H. Hussain, Esq.
Bar Number: Illinois 6331378
Price Law Group, APC
420 E Waterside Dr #3004
Chicago, IL 60601
Telephone: (954) 225-4934
Email: syed@pricelawgroup.com
*Attorney for Plaintiff Keshia Larry*